IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| YVETTE BAKER, | ) |
| Plaintiff, | ) Case No.: |
| v. | ) |
| OCEAN 18, LLC, et al., | ) |
| Defendants. | ) |

## NOTICE OF REMOVAL

TO THIS HONORABLE COURT, TO ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendant Martin Leigh PC ("Martin Leigh"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 hereby files its Notice of Removal of the action styled *Yvette Baker v. Ocean 18, LLC et al.*, Case No. 1816-CV32043, from the Circuit Court of Jackson County, Missouri, at Kansas City to the United States District Court for the Western District of Missouri, Western Division. Removal is proper because the Court has federal jurisdiction under the Class Action Fairness Act, defined under 28 U.S.C. § 1332(d)(2)(A), and under traditional diversity of citizenship pursuant to 28 U.S.C. § 1332(a). In support of this Notice of Removal, Martin Leigh states:

### I. THE STATE COURT ACTION

1. On December 11, 2018, Plaintiff Yvette Baker ("Plaintiff") filed an initial Verified Petition ("Initial Petition") in the Circuit Court of Jackson County, Missouri, Kansas City, Case No. 1816-CV32043, styled *Yvette Baker v. Ocean 18, LLC et al.* Plaintiff's Initial Petition was brought to delay the non-judicial foreclosure sale of her house located at 8926 Tennessee Avenue, Kansas City, Jackson County, Missouri (the "Property"). The Initial Petition

asserted claims under the Missouri Merchandising Practice Act ("MMPA," R.S.Mo. 407.010 *et seq.*) and sought injunctive relief against Ocean 18, LLC ("Ocean 18"); Nationwide Servicing Center, Inc. ("Nationwide"); and Martin Leigh (collectively, "Defendants") to delay the foreclosure.

2. The Initial Petition contained only individual claims, and no class claims, against Defendants. The Initial Petition also expressly alleged, "The amount in controversy is $42,622.66 and does not exceed $75,000." Initial Pet. ¶ 10.

3. On July 2, 2019, Plaintiff filed a First Amended Petition ("FAP"). For ease of reference, a copy of the First Amended Petition is attached hereto as "Exhibit A."

4. The First Amended Petition does not allege that the amount in controversy is limited to $46,622.66. *See generally* FAP.

5. The First Amended Petition seeks class action certification and adds layers of alleged emotional distress type personal injury damages – claims that were not alleged in the Initial Petition – including claims that Plaintiff's ascertainable losses now include alleged personal injuries such as humiliation, anguish, anxiety, depression, emotional distress, and loss of sleep, in addition to negative credit impact and unnecessary out-of-pocket costs type injuries. *See* FAP ¶¶ 103, 120, 144.

6. The allegations in the First Amended Petition and discussed below are expressly denied by Martin Leigh.

7. In the First Amended Petition, Plaintiff alleges that she signed two promissory notes and two deeds of trust granting first and second mortgages on her home. *Id.* ¶ 13. Plaintiff claims that she never received any notice that her second mortgage was transferred to Ocean 18 or Nationwide, however, she alleges that she received a notice of demand and intent to foreclose

2

on the second mortgage from Martin Leigh. *Id.* ¶¶ 23, 31, 33, 36-37. Plaintiff claims that Ocean 18 and Nationwide have never been the holder of the second note, and had no right to enforce the second note. *Id.* ¶¶ 31-32. She claims that Defendants improperly altered the second note by affixing to it an allonge that transferred the note to Ocean 18, and that the second note was therefore improperly acquired by Ocean 18. *Id.* ¶¶ 50, 56.

8. Plaintiff brings two claims for alleged violations of the MMPA against all Defendants. First, she alleges that Defendants violated the MMPA by "deliberate alteration of an allonge," and for alleged concealment of facts and circumstances related to the transfer of the second note to Ocean 18. *Id.* ¶¶ 94-96. Second, Plaintiff alleges that Defendants violated the MMPA because Plaintiff's second note was purportedly not sold or transferred in accordance with Missouri law. *Id.* ¶¶ 108, 110. Finally, Plaintiff brings a third claim – a purported class claim – against Martin Leigh only based on the same allegations, including alleged deliberate allonge alteration, failure to properly sell or purchase the second note, concealment of "material facts related to the debt collector's absence of a legal right to enforce the alleged debt collection, (sic)" and for allegedly deceptive fees charged to Plaintiffs. *Id.* ¶¶ 125-127, 137.

9. Plaintiff's "ascertainable losses" (for both the individual claims and the class claim) allegedly include "humiliation and anguish because of Defendants' debt collection conduct, anxiety, depression, emotional distress, loss of sleep, negative credit impact, and unnecessary out-of-pocket costs," as well as "fees paid for services not performed, interest on those fees, costs of suit, attorney's fees, expert witness fees, punitive damages, pre-judgment interest, post-judgment interest, and other such relief as the Court may determine." *Id.* ¶¶ 103, 105, 120, 122, 144, 146.

## II. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

10. Pursuant to 28 U.S.C. § 1446(a), copies of all summons, process, pleadings, motions and orders that have been filed in the State Court Action are attached hereto as "Exhibit B."

11. This Court embraces the locality in which the State Court Action is now pending, making this Court a proper forum pursuant to 28 U.S.C. § 1441(a).

12. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Plaintiff, and a copy is being filed with the Circuit Court of Jackson County, Missouri.

13. Removal of this action is timely in accordance with 28 U.S.C. § 1446(b)(3). Defendant Nationwide filed a notice of removal of this action based on diversity jurisdiction on February 5, 2019, when the Initial Petition was the operative pleading. The case was remanded on or about April 24, 2019 because the Initial Petition, containing only individual claims, alleged, "The amount in controversy is $42,622.66 and does not exceed $75,000." *See* District Court's Order of Remand, attached hereto as "Exhibit C," at 3. The district court further explained that the action could not be removed based on the proposed amended petition at that time, as it had not yet been filed and accepted by the state court. *Id.* at 3-4. The First Amended Petition, which does not limit the amount in controversy like the Initial Petition and which adds a class claim, was formally filed on July 2, 2019, and the case thus became removable on July 2, 2019. Because this Notice of Removal is being filed within 30 days of July 2, 2019, it is timely under 28 U.S.C. § 1446(b)(3).

14. While not necessary under CAFA, removal under on the basis of traditional diversity jurisdiction requires consent of all defendants who have been properly joined and

4

served. *See* 28 U.S.C. § 1446(b)(2)(A). Nationwide and Ocean 18 consent to removal of this action.

15. If any question arises regarding the propriety of the removal of this action, Martin Leigh respectfully requests the opportunity to present a brief and/or oral argument in support of its position that this case is removable.

**III. GROUNDS FOR REMOVAL: DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")**

16. Defendant Martin Leigh removes the state court class action to this Court pursuant to 28 U.S.C. §§ 1332 (diversity of citizenship), 1446 (procedure for removal), and 1453 (removal of class actions) because it is a civil class action consisting of over one hundred (100) putative class members, involving an amount in controversy exceeding $5,000,000, and at least one of the defendants has a different citizenship than at least one of the putative class members. *See* 28 U.S.C. § 1332(d) (providing that district courts have original jurisdiction over a class action where: (1) the class consists of 100 members or more; (2) the amount in controversy exceeds the sum of $5,000,000, exclusive of costs and interest; and (3) any member of the class is a citizen of a state different from any defendant).

17. The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453, permits removal of certain class actions. CAFA amended 28 U.S.C. § 1332(d) to vest district courts with original jurisdiction of any civil class action if (1) any member of the plaintiff class is a citizen of a state different from any defendant; (2) the aggregate number of proposed plaintiffs is 100 or greater; and (3) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

18. Without conceding any merit to Plaintiff's claims, damages, or ability to certify the putative class, Martin Leigh asserts that the CAFA elements are satisfied.

### A. The Minimum Diversity Requirement is Satisfied.

19. Removal under CAFA requires minimal diversity—i.e., one of the defendants must be diverse from any one of the class members, whether named or unnamed. 28 U.S.C. § 1332(d)(2)(A) (diversity is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant"); 28 U.S.C. § 1332(d)(1)(D) (for purposes of CAFA, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action").

20. Plaintiff is a citizen of the State of Missouri and by filing this action initially to maintain ownership over Plaintiff's Property referenced in her petitions, has demonstrated an intent to remain in Missouri indefinitely. Initial Pet. ¶¶ 1, 4, 9, 11; FAP ¶¶ 1, 5, 12 (alleging that Plaintiff is a citizen of Missouri and suffered the alleged injuries in Missouri); *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768-69 (8th Cir. 2005) ("Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely").

21. For purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. 1332(d)(1). CAFA displaces the traditional rule of basing LLC citizenship on that of its members. *Id.*; *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010); *Davis v. HSBC Bank Nev. N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) (Kleinfeld, J., concurring). Under CAFA, an LLC is a citizen of the state(s) in which it is organized and has its principal place of business. 28 U.S.C. 1332(d)(1); *Ferrell*, 591 F.3d at 701-05; *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

22. Defendant Ocean 18, LLC is organized under the laws of Delaware and its principal place of business is in San Diego, California. FAP ¶ 2. As such, Ocean 18, LLC is a

6

Case 4:19-cv-00606-SRB   Document 1   Filed 08/01/19   Page 6 of 20

citizen of Delaware and California for purposes of CAFA diversity jurisdiction. *Id.*; 28 U.S.C. § 1332(d)(2).

23. Defendant Nationwide Servicing Center, Inc. is organized the laws of California and its principal place of business is in California. FAP ¶ 3. As such, Nationwide Servicing Center, Inc. is a citizen of California for purposes of CAFA diversity jurisdiction. *Id.*; 28 U.S.C. § 1332(d)(2).

24. Minimal diversity under CAFA exists because Plaintiff is a citizen of a different state than both Ocean 18 and Nationwide.

**B. The Proposed Class Consists of 100 Members or More.**

25. CAFA requires that there be at least 100 members in the putative class or classes. 28 U.S.C. § 1332(d)(5)(B) (prohibiting jurisdiction under CAFA where "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

26. Plaintiff's proposed class definition is the following: "All Missouri citizens who received a debt collection letter from Martin Leigh between 2007 and the present where Martin Leigh was acting on behalf of a debt purchaser." FAP ¶ 73.

27. Plaintiff has attached as "Exhibit 1" to the First Amended Petition a letter she alleges is a "debt collection letter" from Martin Leigh. *See* FAP ¶ 44, Ex. 1.

28. Between 2007 and the present, Martin Leigh has sent a debt collection letter (as characterized by Plaintiff) to over 100 Missouri residents and citizens, while Martin Leigh was acting on behalf of a creditor. *See* Declaration of Gregory D. Todd ("Todd Decl."), attached hereto as "Exhibit D," ¶ 5.

29. Therefore, Plaintiff's proposed class consists of over 100 members.

7

### C. The Amount in Controversy Exceeds the $5,000,000 Jurisdictional Minimum.

30. CAFA provides for federal court jurisdiction over class action suits when the "amount in *controversy*" exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2) (emphasis added).

31. In petitioning this Court for removal, Martin Leigh in no way concedes the truth of the allegations in the First Amended Petition, admits liability, or concedes that Plaintiff or members of the putative class would be entitled to recover any or all of the amounts claimed. Such an admission is not required. *Cova v. Charter Communs., Inc.*, 2016 U.S. Dist. LEXIS 108028, at *8 (E.D. Mo. Aug. 16, 2016) ("A defendant is therefore not required to admit the allegations, and thus deprive itself of potential defenses, to avail itself of a federal forum under CAFA."); *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 825 (8th Cir. 2011) ("[A] well-accepted jurisdictional maxim dictates that a meritorious defense does not undermine jurisdiction."). Thus, without admitting liability or damages, Martin Leigh respectfully submits that the amount in controversy in this case exceeds the $5,000,000 threshold for federal jurisdiction.

32. While Plaintiff alleges that "[t]he amount in controversy on the state-wide class action claim does not exceed $5 million," (FAP ¶ 79), Plaintiff is not permitted to disclaim recovery of greater than $5 million prior to class certification in order to overcome the CAFA jurisdictional threshold. *See Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 593 (2013) (explaining that a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified, and for CAFA jurisdictional purposes, the plaintiff lacked authority pre-certification to conceded the amount in controversy).

33. A party seeking to remove under CAFA must establish the amount in controversy by a preponderance of the evidence. *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009).

8

"Under the preponderance of evidence standard, '[t]he jurisdictional fact . . . is not whether the damages *are* greater that the requisite amount, but whether a fact finder *might* legally conclude that they are . . . .'" *Id.* at 958 (emphasis in original) (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). "The removing party's burden is one of 'pleading' and not one of 'proof.'" *City of O'Fallon v. Centurylink, Inc.*, 930 F. Supp. 2d 1035, 1041 (E.D. Mo. 2013).

34. Pursuant to CAFA, "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

35. Plaintiff brings suit under the MMPA for alleged deceptive and unfair practices. The MMPA provides that a plaintiff may recover actual damages, punitive damages, attorney's fees to the prevailing party, and equitable relief. R.S.Mo § 407.025.1.

36. Plaintiff seeks damages on behalf of a class for "humiliation and anguish because of Defendants' debt collection conduct, anxiety, depression, emotional distress, loss of sleep, negative credit impact, and unnecessary out-of-pocket costs," as well as "fees paid for services not performed, interest on those fees, costs of suit, attorney's fees, expert witness fees, punitive damages, pre-judgment interest, post-judgment interest, and other such relief as the Court may determine." FAP ¶¶ 103, 105, 120, 122, 144, 146.

**Actual Damages:**

37. With respect to actual damages, in paragraph 139 of the First Amended Petition, Plaintiff alleges that Martin Leigh charged fees to Plaintiffs exceeding the amounts owed by borrowers. FAP ¶ 139. In paragraph 146 of the First Amended Petition, Plaintiff alleges that Martin Leigh is liable to Plaintiffs for "fees paid for services not performed." *Id.* ¶ 146. Her class

9

claim includes all Missouri citizens from 2007 to the present, to whom Martin Leigh sent a debt collection letter where Martin Leigh was acting on behalf of a debt purchaser. *Id.* ¶ 73.

38. While the precise measure of damages Plaintiff seeks is not clear from the First Amended Petition, between 2007 and the present in the State of Missouri, Martin Leigh has charged and collected fees and costs in excess of $5,000,000.00 for trustee services provided in Missouri. Todd Decl. ¶ 8.

39. Thus, to the extent Plaintiff claims Martin Leigh, in collecting debts, charged fees exceeding the amounts the putative class members owed, actual damages alone are in excess of $5,000,000.

**Punitive Damages:**

40. Plaintiff seeks punitive damages on behalf of the putative class. FAP ¶ 146.

41. Punitive damages are included in calculating the amount in controversy under CAFA. *City of O'Fallon v. Centurylink, Inc.*, 930 F. Supp. 2d 1035, 1041 (E.D. Mo. 2013); *Harrington Enterprises v. Safety-Kleen Systems*, 42 F. Supp. 3d 1197, 1201 (W.D. Mo. 2013) ("[T]he Court finds it may consider the Consumer Class's punitive damages. As above, the Class seeks these damages, the MMPA provides for them, and the amount in controversy includes them. Thus, these damages are at issue here. Under Missouri law, the Class's punitive damages award could total up to five times the combined sum of its compensatory damages and attorney's fees.").

42. Although no particular ratio of punitive to compensatory damages is easily identifiable, the Supreme Court has instructed that double, treble, and quadruple damages have been sanctioned. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *see also MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 933 (8th Cir. 2004) (upholding a 2:1 ratio of punitive damages to compensatory damages). In cases where egregious conduct results in

minimal economic damages, it is possible for even higher ratios to be sought. *See Campbell*, 538 U.S. at 425.

43. "Under Missouri law, the Class's punitive damages award could total up to five times the combined sum of it compensatory damages and attorney's fees." *Harrington Enterprises*, 42 F. Supp. 3d at 1201 (MMPA case).

44. In *Holm v. Wells Fargo Home Mortgage, Inc.*, 514 S.W.3d 590 (Mo. 2017), a wrongful foreclosure case involving claims for emotional distress damages (like Plaintiff alleges here), Plaintiff's counsel obtained a judgment for punitive damages in the amount of $2,959,123, although the case was remanded to allow a jury to assess damages. *Id.* at 595. Based on the *Holm* result, punitive damages in this case could be in the millions.

45. Assuming that punitive damages are appropriate here as alleged by Plaintiff, a 2:1 ratio would impose a punitive damages award of at least $10,000,000 (as since 2007, the fees and costs charged and collected by Martin Leigh with respect to trustee services provided in Missouri in relation to borrowers to whom Martin Leigh has sent a "debt collection letter" (as characterized by Plaintiff) while acting on behalf of a creditor, exceed $5,000,000). *See* Todd Decl. ¶¶ 8-9.

**Attorneys' Fees:**

46. Plaintiff seeks attorneys' fees on behalf of the putative class. FAP ¶ 146.

47. Allowable attorneys' fees are included in calculating the amount in controversy under CAFA. *City of O'Fallon*, 930 F. Supp. 2d at 1041; *Harrington Enterprises v. Safety-Kleen Systems*, 42 F. Supp. 3d 1197, 1201 (W.D. Mo. 2013) ("[T]he Court finds it may consider the Consumer Class's statutory attorney's fees. The Class seeks these fees, the MMPA provides for them, and the amount in controversy includes them. Thus, these fees are at issue here."); *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) (MMPA)

11

48. Plaintiff's counsel's billing rate for class action work is $515 an hour, his hourly rate ranges from $350 – $600, and his paralegal's hourly billing rate is $170. *See* Affidavit of Plaintiff's counsel, March 15, 2017, attached hereto as "Exhibit E." Moreover, as revealed in Plaintiff's counsel's affidavit, his attorneys' fee claim in a recent class action case where he served as co-counsel was $399,125. The class action and personal injury features of the First Amended Petition, as well as the fact that Plaintiff has at least four attorneys working on this case, suggests that the attorneys' fees sought will be considerable.

49. In *Harrington Enterprises*, the court determined attorney's fees pursuant to the MMPA "[b]y applying a standard 33% attorney's fee to the Class's compensatory damages." *Harrington Enterprises*, 42 F. Supp. 3d at 1201.

50. As discussed, since 2007, the fees and costs charged and collected by Martin Leigh with respect to trustee services provided in Missouri in relation to borrowers to whom Martin Leigh has sent a "debt collection letter" (as characterized by Plaintiff) while acting on behalf of a creditor, exceed $5,000,000. *See* Todd Decl. ¶¶ 8-9. As such, an attorneys' fee award could be over $1,500,000.

51. Without admitting that Plaintiff or the class is entitled to anything—indeed, Martin Leigh strongly contends that they are not—the amount in controversy exceeds the $5,000,000 jurisdictional minimum under CAFA.

52. For the reasons set forth above, the Court has federal jurisdiction of this action under the Class Action Fairness Act.

## IV. GROUNDS FOR REMOVAL: TRADITIONAL DIVERSITY JURISDICTION

53. Federal jurisdiction additionally exists based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different States,

12

and there is a good faith basis to believe that the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1441.

54. As discussed in Section II above, the procedural requirements for removal are satisfied, including consent of the remaining Defendants.

### A. Complete Diversity of Citizenship Exists.

55. Plaintiff is a citizen of the State of Missouri and by filing this action initially to maintain ownership over Plaintiff's Property referenced in her petitions, has demonstrated an intent to remain in Missouri indefinitely. Initial Pet. ¶¶ 1, 4, 9, 11; FAP ¶¶ 1, 5, 12 (alleging that Plaintiff is a citizen of Missouri and suffered the alleged injuries in Missouri).

56. The citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of each of its members. *GMAC Commer. Credit LLC v. Dillard Department Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004). Defendant Ocean 18, LLC is a Delaware limited liability company with its principal place of business is in San Diego, California, and its sole member and manager is Israel Hechter, who is a California resident. As such, Ocean 18, LLC is a California citizen for purposes of diversity jurisdiction.

57. For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Nationwide Servicing Center, Inc. is a corporation organized the laws of California and its principal place of business is in California. FAP ¶ 3. As such, Nationwide Servicing Center, Inc. is a citizen of California for purposes of CAFA diversity jurisdiction.

58. Martin Leigh PC is a professional corporation organized and existing under the laws of Missouri, and its principal place is business is in Missouri. However, Martin Leigh has

13

been fraudulently joined in this case and its citizenship should be disregarded in evaluating federal jurisdiction.

59. "Courts have long recognized fraudulent joinder as an exception to the complete diversity rule." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). Where "the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 1977).

60. Moreover, "[a]n exception to the forum-defendant rule is that if the forum defendant was fraudulently joined, the case may be removed (assuming all other removal requirements are met, as they are here)." *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 866 (E.D. Mo. 2016).

61. Plaintiff's First Amended Petition does not state a colorable claim against Martin Leigh, and as such, it is clear Martin Leigh has been fraudulently joined to defeat diversity jurisdiction.

62. In Plaintiff's Initial Petition – which was *verified* – Plaintiff alleges claims against Martin Leigh on the basis that it sought to conduct a foreclosure sale on Plaintiff's Property as a Successor Trustee for the Deed and Trust signed by Plaintiff. *See* Initial Pet. ¶¶ 26, 32, 50-51. Plaintiff's verified allegations are brought against Martin Leigh entirely in its capacity as Successor Trustee under a Deed of Trust.

63. However, in the Eighth Circuit, it is well-settled law that the MMPA does not apply to claims against Successor Trustees under a Deed of Trust. *See Wivell v.Wells Fargo Bank, N.A.*, 773 F.3d 887, 895-96 (8th Cir. 2014).

64. Thus, in the First Amended Petition, to skirt the fraudulent joinder problem, Plaintiff removes the allegation that Martin Leigh is a Successor Trustee, and Plaintiff instead labels Martin Leigh as a "debt collector" (though there are no claims brought pursuant to the federal Fair Debt Collection Practices Act). However, Plaintiff's characterization of Martin Leigh as a "debt collector" is legally irrelevant in the context of an MMPA claim, which fails as a matter of law, no matter what Plaintiffs calls Martin Leigh. As alleged in Plaintiff's Verified Initial Petition, there is no escaping the fact that Martin Leigh was the Successor Trustee under a Deed of Trust securing a note signed by Plaintiff. Todd Decl. ¶ 3.

65. Federal courts in Missouri have consistently held that in wrongful foreclosure or quiet title actions, the citizenship of a successor trustee should be disregarded for purposes of diversity jurisdiction. *See Caranchini v. Nationstar Mortgage, LLC, and Martin Leigh PC*, 4:17-CV00775-DGK, Doc. 24 at 5-6; *Simms v. Nationstar Mortg., LLC*, 2014 WL 1515881, *4 (E.D. Mo. April 18, 2014) ("in an equitable wrongful foreclosure case, the trustee is a nominal party whose citizenship is disregarded for purposes of federal diversity jurisdiction"); *Hammond v. First Magnus Corp.*, 2014 WL 1374826, *2 (W.D. Mo. April 8, 2014); *Wyatt v. Liberty Mortg. Corp.*, 2013 WL 6730298, *4 (W.D. Mo. Dec. 19, 2013), *Wivell v. Wells Fargo Bank, N.A.*, 2013 WL 2089222, 2-3 (W.D. Mo. May 14, 2013); *Caranchini v. Kozeny & McCubbin*, LLC, 2011 WL 5921364, * 3 (W.D. Mo. Nov. 28, 2011).

66. In *Obduskey v. McCarthy & Holthus LLP*, ___U.S.___ , ___, 139 S. Ct. 1029, 1038 (2019), the United States Supreme Court also recently ruled that, in the context of non-judicial foreclosures, Trustees under Deeds of Trust are not debt collectors.

67. Furthermore, Plaintiff's attempt to label Martin Leigh as a debt collector in the context of an MMPA claim is curious in that the MMPA does not contain a definition for "debt

collector" (*see* R.S.Mo. 407.010), nor does the MMPA dedicate a cause of action for debt collectors. *See* R.S.Mo. 407.020. Instead, the phrase "debt collector" is a term defined by the federal Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692a(6).

68. Plaintiff's counsel has been caught using the fraudulent joinder tactic (and asserting baseless MMPA claims) against law firms that serve as Successor Trustees under Deeds of Trust on multiple occasions – including on two prior occasions against Martin Leigh. Specifically, such cases include:

- *Caranchini v. Nationstar Mortgage, LLC, and Martin Leigh PC*, 4:17-CV00775-DGK, Doc. 24 at 5-6 (finding that Plaintiff's counsel ***fraudulently joined*** Martin Leigh and that "Plaintiff's MMPA claim against successor trustee Martin Leigh fails.");
- *McCormies v. Penny Mac Loan Services, LLC and Millsap & Singer, P.C.*, 5:18-CV-06003-GAF, Doc. 30 (ruling that Plaintiff's counsel ***fraudulently joined*** the Millsap & Singer law firm in a lawsuit challenging a lender's right to foreclose and ruling that the MMPA claim failed as a matter of law);
- *Dedrick v. Federal National Mortgage Association*, 4:12-CV-01425- DGK, Doc. 40, p. 7-9 (ruling that Plaintiff's counsel ***fraudulently joined*** the Millsap & Singer law firm in a lawsuit challenging a lender's right to foreclose and finding that the MMPA claim failed as a matter of law);
- *Gulotta v. Bank of America, et al.*, 4:12-CV-01335-BCW, Doc. 59, p. 6-7 (ruling that Plaintiff's counsel ***fraudulently joined*** the Millsap & Singer law firm in a case challenging a lender's right to foreclose and finding that the MMPA claim failed as a matter of law); and
- *Ball, et al. v. Bank of New York, as Trustee, Martin Leigh Laws & Fritzlen PC*, Case No. 4:12-CV-00144, Doc. 1, and 1(4) (removed to federal court from the Circuit Court of Jackson County, Missouri because Martin Leigh PC's predecessor (Martin Leigh Laws & Fritzlen PC) had been ***fraudulently joined*** and the MMPA claim asserted against Martin Leigh was not colorable).

69. In short, Plaintiff's casting Martin Leigh as a "debt collector" for purposes of Plaintiff's MMPA claim does not warrant any different result than the one reached against the Trustee in *Wivell* and other cited cases above – i.e. the Trustee was fraudulently joined and removal was proper. All of Plaintiff's allegations against Martin Leigh are made under the

MMPA and they fail as a matter of law because the MMPA does not apply to Successor Trustees under a Deed of Trust.

70. Because Martin Leigh was fraudulently joined here, there exists complete diversity, as Plaintiff is a citizen of a different state than the non-fraudulently joined Defendants (Ocean 18 and Nationwide).

**B. The Amount in Controversy Exceeds $75,000.**

71. The amount in controversy with respect to Plaintiff's claim exceeds $75,000, exclusive of interest and costs.

72. Plaintiff's damage allegations are intentionally vague to avoid removal. But in each count, she alleges they include "humiliation and anguish because of Defendants' debt collection conduct, anxiety, depression, emotional distress, loss of sleep, negative credit impact, and unnecessary out-of-pocket costs," as well as "fees paid for services not performed, interest on those fees, costs of suit, attorney's fees, expert witness fees, punitive damages, pre-judgment interest, post-judgment interest, and other such relief as the Court may determine." *Id.* ¶¶ 103, 105, 120, 122, 144, 146.

73. The First Amended Petition challenges Defendants' actions to foreclose a deed of trust against Plaintiff's residence. Plaintiff alleges that as of December 10, 2018, the day before she filed this lawsuit, the payoff amount for Plaintiff's second note in relation to the Property was $46,622.66. FAP ¶ 72. The appraised valued of Plaintiff's property that was the subject of the foreclosure sale exceeds $80,000. *See* "Exhibit F," Jackson County, Missouri Real Estate Appraisal); *see also Morris v. Wells Fargo Home Mortg.*, No. 4:11CV1452 CEJ, 2011 WL 3665150, at *1 (E.D. Mo. Aug. 22, 2011) (the amount in controversy is the property value at the time of foreclosure); *Kisner v. Bank of Am., NA*, No. 10-03527-CV-S-DGK, 2011 WL 2160891,

17

Case 4:19-cv-00606-SRB   Document 1   Filed 08/01/19   Page 17 of 20

at *2 (W.D. Mo. June 1, 2011) (same); *see also Garland v. Mortg. Elec. Registration Sys., Inc.*, Civil Nos. 09-71 (JNE/JJG), 09-72 (JNE/JGG), 09-342 (JNE JJG), 09-430 (JNE/JJG), 2009 WL 1684424, at *2-3 (D. Minn. June 16, 2009) (when a party seeks to invalidate a foreclosure, the value of the right is the value of the property itself).

74. In addition, Plaintiff seeks a wide range of "emotional distress" type damages, including damages for anguish, humiliation, anxiety, depression, loss of sleep, general emotional distress, and damages caused by negative credit impact. In another wrongful foreclosure type case, Plaintiff's counsel obtained a judgment for similar personal injury/emotional distress damages in the amount of $200,000.00. *See Holm v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590, 595 (Mo. 2017). The *Holm* case was remanded to the trial court to allow a jury to assess damages and the case later settled, however, the result supports that emotional distress damages certainly can exceed $75,000 here.

75. Plaintiff seeks statutory attorneys' fees under the MMPA and those anticipated fees are calculated against the amount in controversy. *See Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005). As noted above, Plaintiff's counsel's billing ranges from $350 – $600 per hour (Ex. E, Affidavit of Plaintiff's counsel, March 15, 2017). It is clear that significant time has already been spent on this case, which has been pending for over seven months. Given these billing rates and time spent, the attorneys' fees claim is likely to be considerable and to exceed $75,000.

76. Plaintiff also seeks punitive damages, which alone could exceed $75,000. In *Holm v. Wells Fargo Home Mortgage, Inc.*, 514 S.W.3d 590 (Mo. 2017), a wrongful foreclosure case involving claims for emotional distress damages (like Plaintiff alleges here) Plaintiff's counsel obtained a judgment for punitive damages in the amount of $2,959,123, although the case was

18

remanded to allow a jury to assess damages. *Id.* at 595. Based on the *Holm* result, punitive damages could easily exceed $75,000.

77.     Considering damages associated with the alleged wrongful foreclosure actions in relation to a deed of trust with a payoff amount $46,622.66, the $80,000 property, the unspecified additional actual damages including but not limited to "necessary out-of-pocket costs" and "fees paid for services not performed," the wide variety of emotional distress damages Plaintiff seeks, attorneys' fees, and punitive damages, there is a good faith basis to believe that amount in controversy far exceeds $75,000, exclusive of interest and costs.

78.     For the reasons set forth above, this Court has diversity jurisdiction over this action under 28 U.S.C. § 1441.

WHEREFORE, Defendant Martin Leigh PC hereby removes the action now pending against it in the Circuit Court of Jackson County, Missouri, and requests that this Court assume and retain full jurisdiction over this action for all further proceedings.

Dated:  August 1, 2019                    Respectfully submitted,

By: /s/ James C. Morris
James C. Morris, #53074
Michael S. Dodig  #44595
Gordon Rees Scully Mansukhani, LLP
100 S. 4th Street, Suite 550
St. Louis, Missouri 63102
Tel.: (314) 961-6686
Fax: (314) 338-3076
Email: jmorris@grsm.com
*Attorneys for Defendant*
*Martin Leigh, P.C.*

# CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record, and sent a copy of the foregoing document via first class mail, postage prepaid, addressed to:

***Attorneys for Plaintiff***
Gregory A. Leyh
Erica Denise Baker
James A. Kessinger
Luke Andrew Steven Demaree
Gregory Leyh, PC
104 N.E. 72nd Street, Suite A
Gladstone, MO 64118
Email: gleyh@leyhlaw.com
Email: edbaker@kessingerlaw.net
Email: jak4law@kc.rr.com
Email: lad4law@kc.rr.com

***Attorney for Ocean 18, LLC***
Isreal Hether
1425 University Ave., Ste. D
San Diego, CA, 92103

***Attorney for Nationwide Servicing Center, Inc.***
Terry Dailey
1425 University Ave., Ste. D
San Diego, CA, 92103

Dated: August 1, 2019

Respectfully submitted,

By: /s/ James C. Morris
James C. Morris, #53074
Gordon Rees Scully Mansukhani, LLP
100 S. 4th Street, Suite 550
St. Louis, Missouri 63102
Tel.: (314) 961-6686
Fax: (314) 338-3076
Email: jmorris@grsm.com
*Attorneys for Defendant*
*Martin Leigh, P.C.*