IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

FILED Division 15

JUL 02 2019

CIRCUIT COURT OF JACKSON CO., MO

YVETTE BAKER,                    )
                                 )
                Plaintiff,       )
                                 )
v.                               )
                                 )        Case No. 1816-CV32043
                                 )
OCEAN 18, LLC, et al.,           )
                                 )        Division 15
                Defendants.      )

## PLAINTIFF'S FIRST AMENDED PETITION FOR VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

COMES NOW Plaintiff Yvette Baker, by and through counsel, and for her First Amended Petition For Violations of The Missouri Merchandising Practices Act against Defendants Ocean 18, LLC ("Ocean 18"), Nationwide Servicing Center, Inc. ("Nationwide") and Martin Leigh P.C. ("Martin Leigh") and Class Action Claim for Violations of the Missouri Merchandising Practices Act against Defendant Martin Leigh alleges as follows:

1.      Plaintiff is a natural person who resides in Kansas City, Missouri in the County of Jackson at 8926 Tennessee Avenue, Kansas City, Missouri.

2.      Defendant Ocean 18 is an American financial conglomerate and bulk debt buyer organized under the laws of the State of Delaware and located in San Diego, California. Ocean 18 is not registered to do business in the State of Missouri.

3.      Defendant Nationwide is a loan servicing corporation organized under the laws of the State of California and located in San Diego, California. Nationwide is not registered to do business in the State of Missouri.

4. Defendant Martin Leigh P.C. is a Missouri debt collector located at 2405 Grand Boulevard, Suite 410, Kansas City, Missouri 64108, and conducting business in the County of Jackson, Missouri. Martin Leigh's business practices include collection of debts in Missouri and regularly attempts to collect debts alleged to be due to be owed to purchasers of bad debt. The sole basis for this suit against Martin Leigh is its role as a debt collector, as evidenced by the debt collection letter attached as Exhibit 1.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action because the Defendants, within this state: (1) transacted business, (2) made contracts, (3) attempted to collect debts (4) and the real property in dispute is located in Jackson County.

6. Plaintiff has incurred damages as a result of Defendants' wrongful conduct, described more fully below.

7. This Court, as a court of general jurisdiction, has subject matter jurisdiction over the claims made herein.

8. The Court has personal jurisdiction over Defendant Martin Leigh by service upon registered agent within the boundaries of the State of Missouri.

9. This Court has personal jurisdiction over Defendant Ocean 18 pursuant to the long arm jurisdiction statutes of the State of Missouri in the Defendant's actions affect a lien on real estate within the boundaries of the State of Missouri

10. This Court has personal jurisdiction over Defendants Ocean 18 and Nationwide pursuant to the long arm jurisdiction statutes of the State of Missouri in the Defendants' actions affect a lien on real estate within the boundaries of the State of Missouri.

11.     Venue is proper in this Court pursuant to RSMo §508.030, because the real property is situated in Jackson County, Missouri.

12.     Venue is proper in this Court pursuant to RSMo §508.010(2), because the wrongful conduct occurred in Jackson County, Missouri.

## COMMON ALLEGATIONS OF FACT

13.     On September 30, 2005, Plaintiff signed two Promissory Notes and two Deeds of Trust granting a first and second mortgage to EquiFirst Corporation in order to purchase her family home. A copy of the second note dated September 30, 2005 is attached as Exhibit 2.

14.     EquiFirst recorded both Deeds of Trust on October 3, 2005.

15.     The Deed of Trust recorded with instrument number 2005I0087536 incorporated the promissory note signed for $26,600.00, also referred to as the second mortgage.

16.     The Deed of Trust recorded with instrument number 2005I0087536 did not have any clauses prohibiting oral modifications.

17.     Soon after Plaintiff signed the Notes and Deeds of Trust both mortgages were allegedly transferred to Homecomings Financial, LLC ("Homecomings") which was an affiliate of GMAC Mortgage, LLC, ("GMAC") and Plaintiff made all mortgage payments to Homecomings for the first and the second mortgage.

18.     On June 10, 2009, Plaintiff received notice that the servicing of her mortgage loan was being transferred to GMAC Mortgage, LLC effective July 1, 2009.

19.     Plaintiff then began making all mortgage payments to GMAC for the first and second mortgage, which is evidenced by GMAC account numbers 7440619229 and 7440152452 found on Plaintiff's mortgage interest statements.

20.     On August 9, 2012, GMAC sent a letter approving a modification of Plaintiff's mortgages, and representatives of GMAC assured Plaintiff that once she completed the modification she would only be required to make the modified payments moving forward.

21.     GMAC and Plaintiff performed based on the understood agreement, and Plaintiff from the date that the loan modification was effective, paid the modified payment while GMAC did not pursue any default or payments of the second mortgage.

22.     Plaintiff never received any notice from GMAC that the second mortgage was in default or that payments were owed on the second mortgage.

23.     Plaintiff never received any notice of transfers or assignments of the second mortgage.

24.     Plaintiff does not owe any money to Ocean 18 or Nationwide pursuant to the terms of the second note.

25.     Plaintiff is not in default to Ocean 18 or Nationwide on the second note.

26.     Plaintiff has not dishonored the second note to Ocean 18 or Nationwide.

27.     Plaintiff paid her servicer money pursuant to the second note, but the money was not properly allocated to their account.

28.     As a result of the servicer's improper allocation of Plaintiff's payments, the servicer added charges and fees to Plaintiff's balance.

4

29.     The improper charges and fees added to Plaintiff's balance contributed to the servicer's false declaration that Plaintiff was in default to Ocean 18 or Nationwide.

30.     Defendants Ocean 18 and Nationwide have no right or interest in or to the second note.

31.     Defendants Ocean 18 and Nationwide are not and have never been the holder of the second note, and have no right to enforce the second note.

32.     As is explained further in significant detail, Defendants Ocean 18 and Nationwide are not and have never been the owner of the second note, and have no right to enforce the second note as owner.  Consequently, it is impossible for Plaintiff to be in default to Defendants Ocean 18 or Nationwide.

33.     Plaintiff's second note was never purchased by any alleged buyer, including Ocean 18 or Nationwide.

34.     The signatures contained on endorsements to the second note are not the signatures of the persons whose name appears on the endorsement, and are invalid under RSMo § 400.3-308.

35.     Six years after Plaintiff's modification agreement on or about August 3, 2018, Plaintiff received a 45 day Notice of Demand - Intent to Foreclose and Right to Cure from Mortgage Default Services, LLC for the amount of $29,123.90.

36.     Prior to the Notice of Demand, Plaintiff never received any notices from Ocean 18 or Nationwide that her second mortgage had been transferred to them or that she was in default.

37. On October 15, 2018, in an effort to collect a debt, Martin Leigh recorded a Request for Notice of Sale dated October 12, 2018 and recorded as Document No. 2000510087535.

38. As a debt collector, Martin Leigh should have known that the Request for Notice of Foreclosure Sale referenced the wrong Deed of Trust.

39. As a debt collector, Martin Leigh recorded with the Jackson County, Missouri Recorder of Deeds office a Notice of Sale which referenced the incorrect Deed of Trust.

40. As a debt collector, Martin Leigh published a notice in a newspaper giving notice of the foreclosure sale scheduled for December 13, 2018 of Plaintiff's family home.

41. In the Notice of Demand, Ocean 18 alleges that Plaintiff failed to pay the April 1, 2010 payment and subsequent scheduled payments. However, Plaintiff has a mortgage interest statement showing that she made payments to GMAC on the second mortgage during the same time Ocean 18 alleges she was in default.

42. On or about November 14, 2018, Plaintiff received fifteen Certified mailed letters from Martin Leigh, PC in its role as debt collector, giving Notice of Trustee's Sale scheduled for December 6, 2018 at 12:30 pm. These fifteen notices were fifteen attempts by Martin Leigh to collect a debt.

43. On December 4, 2018, Plaintiff sent a letter to Martin Leigh requesting validation of the debt from Ocean 18, Nationwide, and Martin Leigh.

44. On December 7, 2018, Plaintiff received a packet of documents from Martin Leigh for validation of the debt which included a copy of the second note and debt

collection letter stating that "MARTIN LEIGH IS ATTEMPTING TO COLLECT ON A DEBT." See Exhibit 1.

45.     The copy of the second note indicated that there were three allonges containing alleged endorsements of the second note.

46.     Upon information and belief, the allonges are not enforceable because they are defective, including that the third allonge was not affixed to the second note.

47.     On December 11, 2018, Plaintiff's counsel inspected the second note at the offices of Martin Leigh, acting as a debt collector on behalf of Ocean 18 or Nationwide.

48.     Plaintiff then requested that Martin Leigh send a scanned copy of the inspected second note

49.     The copy of the second note sent on December 11, 2018 was substantially different from the copy sent on December 7, 2018. One difference was that the third allonge was not affixed to the second note sent on December 7. The December 11 copy of the second note had a third allonge now affixed to the second note.

50.     Upon information and belief, the Defendants improperly altered the second note by affixing the third allonge allegedly transferring the second note to Ocean 18, LLC when at the time of validation and on the date of the scheduled foreclosure the third allonge was not firmly fixed to the second note as to become an extension or part of the second note.

51.     Plaintiff disputes that the "original" second note is an original note signed by Plaintiff.

52.     On December 14, 2018, Defendant Martin Leigh, as debt collector and in order to negotiate the debt payment, proposed a workout arrangement that Plaintiff pay

$1,000 as a down payment toward legal fees/costs/advances immediately and $1,000 a month until legal fees/costs/advances are paid, and upon satisfaction a Loan Modification Agreement capitalizing remaining delinquent accrued interest (adding back to unpaid principal) to bring the loan current; waive late charges; same rate, re-amortized based on 30-year term with monthly principal/interest payments of approximately $450.00 per month.

53.     On February 28, 2019, Martin Leigh, as a debt collector, proposed that Plaintiff pay Ocean 18, LLC $38,000 to resolve the matter and release the debt.

54.     On or about 2014, Israel Hechter, the owner and president of Ocean 18, LLC admitted in federal court that he paid one million in bribes to bank insiders at GMAC Mortgage, LLC and in exchange the bankers arranged for Hechter to win bids to purchase mortgage loans issued by banks and sold on the secondary market.

55.     Ocean 18 is a bulk debt buyer and makes windfall profits from buying secondary debts and enforcing against consumers who assume the debts are legitimate.

56.     On information and belief, the secondary mortgage Ocean 18 seeks to enforce in this case was acquired by wrongful conduct committed by Ocean 18, error, or oversight by the GMAC.

57.     GMAC filed for bankruptcy in 2013 after being prosecuted for crimes against its debtors, shortly after Plaintiff's loan modification was granted and it is highly likely that the modification was not documented correctly allowing the second mortgage to be transferred after it had been modified by GMAC.

58.     This can be evidenced by the alterations made on the loan modification that was recorded with the Jackson County Recorder of Deeds which were not a part of the original document signed by Plaintiff.

59.     Upon information and belief, Ocean 18 does not have the proper authority to enforce the second note signed by Plaintiff and to foreclose on Plaintiff's family home.

60.     Ocean 18 is seeking a default for unpaid payments from 2010 that were made to GMAC.

61.     Ocean 18 is a bulk debt collector which buys thousands of secondary debts for pennies on the dollar and Ocean 18 has not provided proper documentation that Plaintiff's second note was transferred or purchased by Ocean 18.

62.     Martin Leigh is in the business of the collection of debts in Missouri and it regularly attempts to collect debts alleged to be owed to purchasers of bulk debt.

63.     Martin Leigh has a pecuniary interest in its business servicing as a debt collect for purposes of the collection of debts in Missouri.

64.     Martin Leigh knew or should have known that it was attempting to collect a debt on behalf of a company that engaged in criminal conduct relating to the purchase of mortgage loans.

65.     Ocean 18 never provided Plaintiff with any documentation of the debt or any accounting of the allegedly unpaid amounts.

66.     Nationwide never provided Plaintiff with any documentation of the debt or any accounting of the allegedly unpaid amounts.

67.     Martin Leigh never provided Plaintiff with any documentation of the debt or any accounting of the allegedly unpaid amounts.

68. Plaintiff explained to Nationwide that her loans had been modified and that she had been making her modified payments.

69. Defendants have never provided any documentation to Plaintiff that its claims were legitimate.

70. Nationwide continued making threatening calls to Plaintiff demanding she pay the full amount of a loan which had already been consolidated in another agreement, and threatening that if she didn't her family home would be sold on the courthouse steps.

71. Plaintiff disputed the debt and requested verification and validation.

72. According to Nationwide, the payoff amount for Plaintiff's second note is $46,622.66 as of December 10, 2018 and Plaintiff was not given notice of this amount prior to scheduled date of foreclosure.

## CLASS ACTION ALLEGATIONS AGAINST DEFENDANT MARTIN LEIGH AS DEBT COLLECTOR

73. The Class of persons whom Plaintiff represents consists of the following:

> All Missouri citizens who received a debt collection letter from Martin Leigh between 2007 and the present where Martin Leigh was acting on behalf of a debt purchaser.

74. A debt purchaser is a party who purchases debts from others and then attempts to collect on them.

75. Plaintiff's class action claims are asserted only against defendant Martin Leigh as a debt collector.

76. The class is limited to Missouri citizens.

77. Martin Leigh is a Missouri citizen and is the only defendant on the class action claim.

78. The injuries complained of by the class were incurred in Missouri.

79.     The amount in controversy on the state-wide class action claim does not exceed $5 million.

80.     Martin Leigh's business involves the collection of debts and its collection activities were carried out to attempt to complete the sale transactions on behalf of the servicer's collection process.

81.     The members of the Class are so numerous that joinder of all of them is impracticable.

82.     There are questions of law or fact common to the Class, including:

(a)     whether the party seeking to enforce the alleged debt was the original creditor;

(b)     whether the party seeking to enforce the alleged debt had a right to do so;

(c)     whether Martin Leigh did anything to verify that the collecting party was the person entitled to collect the alleged debt;

(d)     whether Martin Leigh had actual knowledge or constructive knowledge of the criminal conduct of Ocean 18 relating to the purchase of mortgage loans;

(e)     whether Martin Leigh examined the original contract sales agreement, purchase agreement, schedule of debts purchased or note;

(f)     whether Martin Leigh asked to examine the original contract sales agreement, purchase agreement, schedule of debts purchased or note;

(g)     whether Martin Leigh asked if the original contract sales agreement, purchase agreement, schedule of debts purchased or note existed;

(h)      whether the original contract or note existed; and

(i)      whether Martin Leigh violated the Missouri Merchandising Practices Act.

83.      Plaintiff's claims are typical of the claims of the Class and predominate over any questions impacting only individual members.

84.      Plaintiff has retained counsel who is competent and experienced in class action litigation, and will fairly and adequately protect the interests of the Class.

85.      A class action, under Rule 52.08 of the Missouri Rules of Civil Procedure, is superior to other available methods for the fair and efficient adjudication of this controversy because:

(a)      The named Representative has the same interest as other members of the Class, and are financially able to, and will, vigorously prosecute this action on behalf of the Class;

(b)      It is desirable to concentrate the litigation in this forum because the damages suffered by individual members of the Class may be relatively small, and the expense and burden of individual litigation make it impracticable for individual Class members to pursue separate litigation. Such a situation would permit Defendants to retain the benefits of their wrongdoing despite violations of the law; and

(c)      No difficulties are likely to be encountered in the management of this litigation as a class action.

## COUNT I

## VIOLATIONS OF MMPA

### (BAKER V. ALL DEFENDANTS)

86.     Plaintiff restates and alleges the allegations contained in paragraphs 1 through 85 as if stated in full in Count One.

87.     Missouri's Merchandising Practices Act prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." RSMo 407.020.

88.     Nationwide is a loan servicing company servicing loans on behalf of Ocean 18, LLC.

89.     Nationwide is not licensed or regulated by the Missouri Division of Finance.

90.     Nationwide, as a loan servicer, should have the resources and expertise to execute all aspects of mortgage servicing, including proper allocation of payments, escrow services, payment of taxes and insurance, and compliance with investor guidelines.

91.     Nationwide and Martin Leigh provided a copy of the second note on December 7, 2018. The third allonge had not been firmly fixed to second note.

92.     On December 11, 2018, Martin Leigh produced the second note which had been stapled to all allonges.

93.     Upon information and belief, the second note was altered in order to argue that it was in compliance with the applicable laws of Missouri requiring all allonges to be firmly fixed to the note to be enforceable, and Ocean 18, Nationwide, and Martin Leigh were the only parties who had access to the second note to make alterations.

94.     This claim asserts that the MMPA was violated because of the deliberate alteration of an allonge.

95.     Defendants have produced contradictory and altered evidence that Defendants have the right to enforce Plaintiff's second note.

96.     Defendants used deception, committed an unfair practice, and concealed, suppressed and omitted from Plaintiff material facts and circumstances related to the transfer of the second to Ocean 18.

97.     The material facts concealed, suppressed and omitted from Plaintiff and relating to Defendants right to enforce the second note are known to Defendants or, upon reasonable inquiry, could have been known to Defendants.

98.     The material facts and circumstances concealed, suppressed and omitted from Plaintiff and relating to Ocean 18, LLC acquisition or transfer of the second note are unknown to Plaintiff.

99.     Defendants' actions constitute a pattern and practice of deceptive conduct.

100.    Defendants' actions are in connection with the attempt to collect on a debt.

101.    Defendants' acts described above constitute violations of the MMPA.

102.    As a direct and proximate result of Defendants' violations of the MMPA, Plaintiff suffered ascertainable losses in an amount to be determined at trial.

103. Plaintiff's ascertainable losses include humiliation and anguish because of Defendants' debt collection conduct, anxiety, depression, emotional distress, loss of sleep, negative credit impact, and unnecessary out-of-pocket costs as a result of Defendants' deception.

104. Defendants' conduct described above was malicious, intentional, reckless, corrupt, predatory, and sufficiently in disregard of Plaintiff's right to support an award of punitive damages against Defendants

105. As a result of Defendants' violations of the MMPA, it is liable to Plaintiff for all damages allowed by the MMPA, including for fees paid for services not performed, interest on the those fees, costs of suit, attorney's fees, expert witness fees, punitive damages, pre-judgment interest, post-judgment interest, and other such relief as the Court may determine.

**WHEREFORE**, Plaintiff prays this Court enter judgment in her favor and against Defendants on Count I of her First Amended Petition, for actual damages, punitive damages, and award Plaintiff her attorneys' fees and costs incurred in defending the rights of Plaintiff, together with pre-judgment and post-judgment interest, and for such other and further relief as the Court may deem necessary and proper.

## COUNT II

### VIOLATIONS OF MMPA

#### (BAKER V. ALL DEFENDANTS)

106. Plaintiff restates and alleges the allegations contained in paragraphs 1 through 105 as if stated in full in Count Two.

107. Missouri's Merchandising Practices Act prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." RSMo 407.020.

108. This claim asserts that the MMPA was violated because the second note was not sold or purchased in the manner required by Missouri law.

109. Plaintiff's second note was allegedly purchased or transferred at least five times:

- EquiFirst Corporation to Residential Funding Corporation.
- Residential Funding Corporation to U.S. Bank National Association as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EFC1.
- Ocwen Loan Servicing, LLC Attorney in Fact for U.S. Bank National Association, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EFC1 to Residential Funding Company, LLC.
- Residential Funding Company, LLC to Dreambuilder Investments, LLC.
- Dreambuilder Investments, LLC to Ocean 18, LLC.

110. The merry-go-round of parties allegedly acting as subsequent purchasers of Plaintiff's second note did not properly sell or transfer the second note in the manner required by Missouri law.

111. Defendants have not provided proper documentation that Plaintiff's second note was purchased by Ocean 18.

112. Plaintiff's second note was never purchased by any alleged buyer.

113.     Defendants used deception, committed an unfair practice, and concealed, suppressed and omitted from Plaintiff material facts and circumstances related to the purchase by or sale to Ocean 18 concerning the second note.

114.     The material facts concealed, suppressed and omitted from Plaintiff and relating to the purchase by or sale to Ocean 18 concerning the second note are known to Defendants or, upon reasonable inquiry, could have been known to Defendants.

115.     The material facts and circumstances concealed, suppressed and omitted from Plaintiff and relating to Ocean 18, LLC purchase of the second note are unknown to Plaintiff.

116.     Defendants' actions constitute a pattern and practice of deceptive conduct.

117.     Defendants' actions are in connection with the attempt to collect on a debt.

118.     Defendants' acts described above constitute violations of the MMPA.

119.     As a direct and proximate result of Defendants' violations of the MMPA, Plaintiff suffered ascertainable losses in an amount to be determined at trial.

120.     Plaintiff's ascertainable losses include humiliation and anguish because of Defendants' debt collection conduct, anxiety, depression, emotional distress, loss of sleep, negative credit impact, and unnecessary out-of-pocket costs as a result of Defendants' deception.

121.     Defendants' conduct described above was malicious, intentional, reckless, corrupt, predatory, and sufficiently in disregard of Plaintiff's right to support an award of punitive damages against Defendants

122.     As a result of Defendants' violations of the MMPA, it is liable to Plaintiff for all damages allowed by the MMPA, including for fees paid for services not

performed, interest on the those fees, costs of suit, attorney's fees, expert witness fees, punitive damages, pre-judgment interest, post-judgment interest, and other such relief as the Court may determine.

**WHEREFORE**, Plaintiff prays this Court enter judgment in her favor and against Defendants on Count II of her First Amended Petition, for actual damages, punitive damages, and award Plaintiff her attorneys' fees and costs incurred in defending the rights of Plaintiff, together with pre-judgment and post-judgment interest, and for such other and further relief as the Court may deem necessary and proper.

<h2 style="text-align:center">COUNT III</h2>

<h3 style="text-align:center">STATE-WIDE CLASS ACTION CLAIM FOR VIOLATIONS OF MMPA</h3>

<h3 style="text-align:center">(PLAINTIFF CLASS V. MARTIN LEIGH)</h3>

123. Plaintiff restates and alleges the allegations contained in paragraphs 1 through 122 as if stated in full in Count Three.

124. RSMo § 407.020.1 prohibits the use of deception, fraud, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise, including debt collection.

125. Martin Leigh used deception, committed an unfair practice, and concealed, suppressed and omitted from Plaintiffs material facts related to the right to enforce the second note includes both the allonge deliberate alteration and the failure to properly sell or purchase the second note.

126. Martin Leigh used deception, committed an unfair practice, and concealed, suppressed and omitted from Plaintiffs material facts related to the debt collector's absence of a legal right to enforce the alleged debt collection.

127. The material facts concealed, suppressed and omitted from Plaintiffs and relating to the debt collector's absence of a legal right to enforce the alleged debt collection are known to Defendants or, upon reasonable inquiry, could have been known to Martin Leigh.

128. The material facts concealed, suppressed and omitted from Plaintiffs and relating to the debt collector's absence of a legal right to enforce the alleged debt collection are unknown to Plaintiffs.

129. Martin Leigh used deception, committed an unfair practice, and concealed, suppressed and omitted from Plaintiffs material facts related to the true identity of the debt collector and the real party-in-interest seeking to enforce the debt collection. As a result, Plaintiffs' efforts to ascertain the right of the debt collector and other parties seeking to enforce the debt collection were impaired, and Plaintiffs are deprived of a full and fair opportunity to assert their rights or to identify all legal defenses to debt collection.

130. The material facts concealed, suppressed and omitted from Plaintiffs relating to the true identity of the debt collector and real party-in-interest seeking to enforce the alleged debt are known to Martin Leigh or, upon reasonable inquiry, could have been known to Martin Leigh.

131. The material facts concealed, suppressed and omitted from Plaintiffs relating to the true identity of the debt collector and real party-in-interest seeking to enforce the alleged debt are unknown to Plaintiffs.

132. Martin Leigh is a debt collector in a substantial percentage of all debt collection conducted annually in the State of Missouri.

133.     Martin Leigh's efforts to collect payments are an attempt to complete the sale transactions for which it acts on part of the servicer's collection process.

134.     Martin Leigh's debt collection activities are carried out to enforce the terms of the original sale of consumer debts it has purchased from creditors and other debt collectors and consumer debts owed to third parties.

135.     Providing debt collection services is a service under RSMo 407.011 et seq.

136.     Missouri's Merchandising Practices Act prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." RSMo 407.020.

137.     Martin Leigh's fees charged to Plaintiffs were deceptions and unfair practices as defined by the MMPA.

138.     Martin Leigh used deception, committed an unfair practice, and concealed, suppressed and omitted from Plaintiffs material facts related to Martin Leigh's charges exceeding amounts owed by borrowers.

139.     The material facts concealed, suppressed and omitted from Plaintiffs and relating to Martin Leigh's charges exceeding amounts owed by borrowers are known to Defendants or, upon reasonable inquiry, could have been known to Martin Leigh.

140.     The material facts concealed, suppressed and omitted from Plaintiffs and relating to Martin Leigh's charges in excess of amounts owed by borrowers are unknown to Plaintiffs.

141. Martin Leigh's actions constitute a pattern and practice of deceptive conduct.

142 Martin Leigh's acts described above constitute violations of the MMPA.

143. As a direct and proximate result of Martin Leigh's violations of the MMPA, Plaintiff suffered ascertainable losses in an amount to be determined at trial.

144. Plaintiff's ascertainable losses include humiliation and anguish because of Defendants' debt collection conduct, anxiety, depression, emotional distress, loss of sleep, negative credit impact, and unnecessary out-of-pocket costs as a result of Martin Leigh's deception.

145. Martin Leigh's conduct described above was malicious, intentional, reckless, corrupt, predatory, and sufficiently in disregard of Plaintiffs' right to support an award of punitive damages against Martin Leigh.

146. As a result of Martin Leigh's violations of the MMPA, it is liable to Plaintiffs for all damages allowed by the MMPA, including for fees paid for services not performed, interest on those fees, costs of suit, attorney's fees, expert witness fees, punitive damages, pre-judgment interest, post-judgment interest, and other such relief as the Court may determine.

WHEREFORE, the Plaintiff Class prays this Court enter judgment in their favor and against defendant Martin Leigh on Count III of their State-Wide First Amended Class Action Petition, for actual damages, punitive damages, and award Plaintiffs their attorneys' fees and costs incurred in defending the rights of Plaintiffs, together with pre-judgment and post-judgment interest, and for such other and further relief as the Court may deem necessary and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

GREGORY LEYH, P.C.

/s/ Gregory Leyh
Gregory Leyh, #42283
Gregory Leyh, P.C.
104 N.E. 72nd Street, Suite A
Gladstone, Missouri  64118
(816) 283-3380 Phone
(816) 283-0489 Fax
gleyh@leyhlaw.com

James Kessinger, #42808
Luke Demaree,   #54056
Erica Baker,        #70625
KESSINGER LAW FIRM, P.C.
200 NW Englewood Road, Suite B
Kansas City, Missouri 64118
(816) 436-0707 [phone]
(816) 436-1380 [fax]
Jak4law@kc.rr.com
Lad4law@kc.rr.com
edbaker@kessingerlaw.net
ATTORNEYS FOR PLAINTIFF

Law Office of
MARTIN LEIGH PC
A Professional Corporation
2405 Grand Blvd., Ste 410
Kansas City, MO 64108
816.221.1430
Toll-free 1.800.364.7071
Fax 816.221.1044

December 7, 2018

Gregory Leyh, PC
104 NE 72nd St., Suite A
Gladstone, MO 64118

EXHIBIT

tabbies

|

Re:

| | |
|---|---|
| Loan Number: | PRC813B026 |
| Creditor: | Ocean 18, LLC |
| Your Client: | Yvette Baker |
| Property Address: | 8926 Tennessee, Kansas City, MO 64138 |
| Our File Number: | 3559.322 |

Dear Mr. Leyh:

We are in receipt of your client's correspondence requesting verification of debt. Please find enclosed verification of the captioned debt, including a copy of the payment history, a copy of the promissory note, a copy of the deed of trust, a copy of the notice of service transfer and a copy of the demand notice.

The name and address of the original creditor was EquiFirst Corporation, 500 Forest Point Circle, Charlotte, NC 28273.

If you have any questions concerning the foregoing, please call.

Sincerely,

Martin Leigh PC

Gregory D. Todd

GDT:ct

Enclosures

**MARTIN LEIGH PC IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.**

# NOTE

September 30, 2005        Kansas City        MO
(Date)              (City)            (State)

8926 Tennessee, Kansas City, MO  64138
(Property Address)



EXHIBIT
2

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 26,600.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is EquiFirst Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 11.000%.  The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on November 1, 2005.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of it's scheduled due date and will be applied  to interest before principal. If on,  October 1, 2025, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at
EquiFirst Corporation , 500 Forest Point Circle , Charlotte, NC 28273
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $  274.57  .

## 4. BORROWER'S RIGHT TO PREPAY

**(A) Prepayment**      I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment".  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.  If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to these changes.

**(B) Prepayment Penalty**

If I prepay this loan in full within  3 year(s) from the date of this loan, I agree to pay a prepayment penalty in an amount equal to 2.00% of the balance of the loan outstanding on the date of prepayment.  This amount, known as a prepayment penalty, will be in addition to any other amounts I may owe under the provisions of the Note or the Security Instrument that secures the Note.  If I make a prepayment in full on or after the 3rd anniversary date of the Note, the Note Holder will impose no prepayment penalty.

Mulitstate Fixed Rate Note- Single Family
EF25N (2/00)     (Missouri Version)
Loan Number 821701-B              Page 1 of 3            Initials

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be the greater of 5.00 % or $15.00 of my overdue payment of principal and interest, up to a maximum of $50.00. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees not to exceed 15% of the amount due and payable, together with any court costs assessed, if this Note is referred for collection to an attorney that is not a salaried employee of the Note Holder.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by certified mail to the Note Holder at the address stated in Section 3(A) above or a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at it's option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Yvette Baker_ (Seal)  
Yvette Baker -Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

_____ (Seal)  
-Borrower

# Note Endorsements

Borrower(s): Yvette Baker
Property Address: 8926 Tennessee, Kansas City, MO 64138

PAY TO THE ORDER OF
U.S. Bank National Association as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

By _Judy Faber_

Judy Faber, Vice President

Without Recourse, Pay to the Order of:

RESIDENTIAL FUNDING CORPORATION

EquiFirst Corporation

By: _____

~~Judy Cooney~~  Richard Tarlton
Assistant Vice President

Servicer#:     7440619229

ALLONGE TO NOTE

This Allonge is a permanent part of the Note referenced below:

NOTE DATE:          09/30/2005
LOAN AMOUNT:        $26,000.00
BORROWER NAME(S):   Yvette Baker

PROPERTY:           8926 Tennessee, Kansas City, MO 64138

PAY TO THE ORDER OF:

Residential Funding Company, LLC

WITHOUT RECOURSE

Ocwen Loan Servicing, LLC Attorney In Fact for U.S. Bank National Association, as Trustee, for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EFC1

_Mary A. Miller_
Mary A. Miller, Authorized Signer

Pay to the order of

Dreambuilder Investments, LLC

Without recourse:

Residential Funding Company, LLC

_Mary A. Miller_
Mary A. Miller
Authorized Officer

||||||||||||||||||||||||||||||||||||||||

## ALLONGE TO THE NOTE

**LOAN #:** DBI-273772
**Previous Loan #:** 7440619229/NSP-7927
**Borrower:** YVETTE BAKER
**Date of Note:** 09/30/2005
**Loan Amount:** $26,600.00
**Property Address:** 8926 TENNESSEE, KANSAS CITY, MO 64138

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: _____Ocean 18, LLC_____ , Without Recourse

### DREAMBUILDER INVESTMENTS, LLC

Signature: _____

Printed Name: <u>Tara Newton</u>

Title: <u>Assistant Vice President</u>