# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| YVETTE BAKER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 19-0606-CV-W-SRB |
| OCEAN 18 LLC, et al., | ) |
| Defendants. | ) |

## **ORDER**

Before the Court are 1) Defendant Martin Leigh PC's Motion to Dismiss (Doc. #5) and 2) Plaintiff's Motion for Remand (Doc. #12). Defendants Ocean 18, LLC and Nationwide Servicing Center, Inc. filed a notice joining, in part, Defendant Martin Leigh's motion to dismiss. (Doc. #9). Plaintiff's Motion for Remand (Doc. #12) is GRANTED. This case is remanded to the Circuit Court of Jackson County, Missouri. Defendant Martin Leigh PC's Motion to Dismiss (Doc. #5) will remain pending for the state court's consideration.

### I. Background

Plaintiff Yvette Baker filed this action in the Circuit Court of Jackson County, Missouri on December 11, 2018. Plaintiff's claims arise from the purported, attempted, wrongful non-judicial foreclosure of her property. Plaintiff's original verified petition included claims against Ocean 18, Nationwide, and Martin Leigh (collectively "Defendants") for violations of the Missouri Merchandising Practices Act ("MMPA") and a request for injunctive relief to prevent the foreclosure of Plaintiff's property. A preliminary injunction was issued on December 21, 2018. Defendants filed a motion to dismiss on December 17, 2018, and Plaintiff filed a motion for leave to file an amended petition on January 11, 2019. On February 5, 2019, and before the

state court ruled on the pending motion for leave to file an amended petition, Defendants removed the case to this Court on the basis of diversity jurisdiction. Given that the operative, original petition did not satisfy the amount-in-controversy requirement, this Court remanded the case to state court on April 23, 2019.

On remand, the state court granted Plaintiff leave to file an amended petition, which was filed on July 2, 2019. On August 1, 2019, Defendants again removed the case to this Court. The now operative, first-amended petition includes three counts against the same Defendants. Counts I and II are MMPA claims against all Defendants, and Count III is a state-wide, class-action claim against only Defendant Martin Leigh for violation of the MMPA. The first-amended petition defines the class:

> All Missouri citizens who received a debt collection letter from Martin Leigh between 2007 and the present where Martin Leigh was acting on behalf of a debt purchaser.

(Doc. #1-1, ¶ 73).

Defendant Martin Leigh's Notice of Removal states this Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2) and 1453. Alternatively, Defendant Martin Leigh states traditional diversity jurisdiction exists because Defendant Martin Leigh has been fraudulently joined in this case in that a successor trustee under a deed of trust cannot be found liable for MMPA violations as a matter of law. The parties' citizenship is undisputed. Plaintiff is a Missouri citizen, and Defendant Martin Leigh is also a Missouri citizen. For purposes of CAFA, Ocean 18 is a citizen of California and Delaware, and Nationwide is a California citizen.

The original petition identified Defendant Martin Leigh as a successor trustee under a deed of trust. The first-amended petition does not use the term "successor trustee" but

characterizes Defendant Martin Leigh as a debt collector. More important for this Court's analysis, however, are the allegations of actual misconduct by Defendant Martin Leigh, some of which fall inside the successor-trustee role and some of which fall outside the successor-trustee role.

The Court will summarize Plaintiff's allegations in the first-amended petition. On September 30, 2005, Plaintiff signed two Promissory Notes and two Deeds of Trust granting a first and second mortgage to EquiFirst Corporation. The second mortgage was in the amount of $26,600.00. The mortgages and/or servicing of the mortgages were thereafter transferred to other entities. On or around July 1, 2009, Plaintiff began making all mortgage payments to the then loan servicer, GMAC Mortgage, LLC. On August 8, 2012, GMAC sent Plaintiff a letter approving a modification of Plaintiff's mortgages. Plaintiff thereafter paid the modified payments. Plaintiff did not receive any notice that her second mortgage or the servicing of her second mortgage was transferred to Ocean 18 or Nationwide. Plaintiff did not receive any notice of default until August 3, 2018, when Plaintiff received a 45-day Notice of Demand – Intent to Foreclose and Right to Cure from Mortgage Default Services, LLC for the amount of $29,123.90. Plaintiff alleges she was not in default on the second mortgage.

On October 15, 2018, Defendant Martin Leigh recorded a Request for Notice of Sale dated October 12, 2018. Defendant Martin Leigh published notice in a newspaper of the foreclosure sale scheduled for December 13, 2018. On or about November 14, 2018, Plaintiff received fifteen certified-mail letters from Defendant Martin Leigh notifying Plaintiff of the trustee's sale scheduled for December 6, 2018, at 12:30 p.m. On December 4, 2018, Plaintiff sent Defendant Martin Leigh a letter requesting validation of the debt. On December 7, 2018, Plaintiff received from Defendant Martin Leigh a packet of documents that included a copy of

the second note. The second note indicated there were three allonges containing alleged endorsements of the second note. The third allonge was not affixed to the second note. The packet included a letter from Defendant Martin Leigh on the bottom of which was a statement in all capital letters, "MARTIN LEIGH PC IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." (Doc. #1-1, p. 23).

On December 11, 2018, Plaintiff's counsel inspected the second note at Defendant Martin Leigh's office, and Plaintiff's counsel requested a scanned copy of the second note. The December 11 scanned copy "was substantially different" than the December 7 copy in that the December 11 copy had a third allonge affixed to the second note. (Doc. #1-1, p. 7). Plaintiff alleges, "Upon information and belief, the second note was altered in order to argue that it was in compliance with the applicable laws of Missouri requiring all allonges to be firmly fixed to the note to be enforceable, and Ocean 18, Nationwide, and Martin Leigh were the only parties who had access to the second note to make alterations." (Doc. #1-1, p. 14).

On December 14, 2018, Defendant Martin Leigh proposed a "workout arrangement" that would allow Plaintiff to make payments over time. On February 28, 2019, Defendant Martin Leigh proposed Plaintiff make a $38,000 payment to Ocean 18 to satisfy the debt. In connection with the state-wide class-action claim, Plaintiff alleges, "Martin Leigh's business involves the collection of debts and its collection activities were carried out to attempt to complete the sale transactions on behalf of the servicer's collection process." (Doc. #1-1, p. 11).

Defendant Martin Leigh filed its motion to dismiss on August 7, 2019. In the motion to dismiss, Defendant Martin Leigh argues Plaintiff failed to state a claim against Defendant Martin Leigh because the MMPA does not apply to successor trustees under a deed of trust. Defendant Martin Leigh also argues, and Defendants Ocean 18 and Nationwide join in this portion of the

motion, that Plaintiff's MMPA claims fail because Plaintiff does not allege an ascertainable loss. On August 16, 2019, Plaintiff filed her motion for remand. Though the motion to dismiss was filed first, the Court must find it has subject-matter jurisdiction over this matter before it can consider any merits arguments under Federal Rule of Civil Procedure 12(b)(6). *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## II. Legal Standard

Defendants may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing subject-matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). "[A] district court is required to resolve all doubts about federal jurisdiction in favor of remand." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) (citation omitted).

Pursuant to 28 U.S.C. § 1332(a)(1), "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different states[.]" Section 1332(a)(1) requires complete diversity, which means "*each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original). Removal based on CAFA, however, requires only minimal diversity. Pursuant to § 1332(d)(2)(A), "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" Two mandatory exceptions to CAFA jurisdiction are codified at

§ 1332(d)(4)(A) and (B), the local-controversy exception and the home-state exception, respectively.

"The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Murphy v. Aurora Loan Svcs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012). The Eighth Circuit has articulated the fraudulent joinder standard:

> Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent. "[I]t is well established that if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977). However, if there is a "colorable" cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder. *See Foslip Pharm., Inc. v. Metabolife Int'l, Inc.*, 92 F. Supp. 2d 891, 903 (N.D. Iowa 2000). As we recently stated in [*Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)], ". . . joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." . . . Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent.

*Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (emphasis in original) (footnote omitted).

The *Filla* standard for determining fraudulent joinder is distinct from the standard under Federal Rule of Civil Procedure 12(b)(6) for determining failure to state a claim. A district court's fraudulent-joinder analysis under *Filla* is "limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010) (internal quotations omitted) (quoting *Filla*, 336 F.3d at 811). To survive a Rule 12(b)(6) motion to

6

dismiss, on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Junk*, 628 F.3d at 445 (internal quotations omitted) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Thus, the *Filla* standard is less "demanding" on a plaintiff than the 12(b)(6) standard is. *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 980 (8th Cir. 2011) (citing *Junk*, 628 F.3d at 445) ("By requiring the defendant to prove that the plaintiff's claim against the non-diverse defendant has no reasonable basis in law and fact, we require the defendant to do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion.").

### III. Discussion

#### A. CAFA Jurisdiction

The parties dispute which parties' citizenship should be considered for minimal diversity under CAFA because the two, non-diverse defendants are not named in the sole, class-action claim. The parties also dispute whether Plaintiff can plead around the $5,000,000 jurisdictional threshold by alleging in the first-amended petition, "The amount in controversy on the state-wide class action claim does not exceed $5 million." (Doc. #1-1, ¶ 79). The Court finds it need not reach these issues, however, because regardless, the local-controversy exception and the home-state exception would require this Court to decline to exercise CAFA jurisdiction.

"The party seeking remand bears the burden of proof for a CAFA exception." *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265 (8th Cir. 2015) (citing *Westerfield v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010)). Any doubt about the applicability of a CAFA exception should be resolved in favor of the non-moving party. *Westerfield*, 621 F.3d at 823. As instructed in *Westerfield*, the Court begins with the language of the statute itself. *Id.* Section 1332(d)(4) provides:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)—

    (A)(i) over a class action in which—

        (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

        (II) at least 1 defendant is a defendant—

            (aa) from whom significant relief is sought by members of the plaintiff class;

            (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

            (cc) who is a citizen of the State in which the action was originally filed; and

        (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

    (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

    (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

The Eighth Circuit has recognized a plaintiff's ability to define a class as including only "citizens" of a particular State in order to satisfy the "greater than two-thirds" requirement of the local-controversy exception and the "two-thirds or more" requirement of the home-state exception. *Hood*, 785 F.3d at 266 (citing *In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010)). As previously stated, Plaintiff's proposed class includes only "Missouri citizens." Accordingly, Plaintiff has carried her burden with respect to these elements of the two mandatory exceptions.

In *Westerfield* the Eighth Circuit held that "whether an in-state defendant is a significant defendant for purposes of the local-controversy exception must be determined by considering the claims of 'all of the class members in [the] class action[.]'" 621 F.3d at 824-25 (quoting 28 U.S.C. § 1332(d)(1)(A)). In this case Defendant Martin Leigh is the sole class-claim Defendant and, therefore, certainly a significant Defendant in relation to the "claims of all class members in the class action." Defendant Martin Leigh is the sole Defendant from whom the proposed plaintiff class seeks relief, and Defendant Martin Leigh is the sole Defendant whose conduct forms a basis of the claims asserted by the proposed plaintiff class.

Defendant Martin Leigh argues that *Westerfield* supports the conclusion that Defendant Martin Leigh is *not* a significant defendant for purposes of the local-controversy exception. Defendant Martin Leigh relies on the following quote from *Westerfield*, "This reading of the local-controversy exception would allow class-action plaintiffs to avoid federal jurisdiction under CAFA simply by pleading their claims against an in-state defendant as separate counts on behalf of a separate class." (Doc. #18, p. 14) (citing 621 F.3d at 825). In *Westerfield* the Eighth Circuit analyzed the significant-defendant requirement where the plaintiff pled class claims against a non-diverse defendant and pled separate class claims against a diverse defendant, each on behalf of separate plaintiff classes. 621 F.3d at 823. In this case Plaintiff has not pled a class claim against the non-diverse Defendants. As a result, the preceding quote is inapplicable to Defendant Martin Leigh's position relative to the plaintiff class.

The statutory language of § 1332(d)(4)(A)(i)(II)(aa)-(bb) ties a defendant's "significance" to the "plaintiff class." The proposed plaintiff class in this case has no connection to the non-diverse Defendants Ocean 18 and Nationwide because no claims are brought on

9

behalf of the proposed plaintiff class against those non-diverse Defendants.  The Court finds Plaintiff has carried her burden with respect to § 1332(d)(4)(A)(i)(II).

The Court finds Plaintiff has also satisfied her burden with respect to § 1332(d)(4)(A)(i)(III).  The class includes Missouri citizens who received a debt collection letter from Defendant Martin Leigh.  Therefore, the principal injuries are necessarily tied to the State of Missouri.  Finally, Plaintiff has satisfied her burden with respect to § 1332(d)(4)(A)(ii).  Plaintiff states she searched for and could not find a similar class action having been filed in the last three years.  (Doc. #12, p. 10).  Defendant Martin Leigh does not challenge this finding.

With respect to the primary-defendant requirement of the home-state exception, the parties agree the test is as stated in *Nicholson v. Prime Tanning Corp.*, No. 09-6083-CV-SJ-GAF, 2009 WL 2900042, at *1 (W.D. Mo. Sept. 3, 2009).  "[A] 'primary defendant' has been understood to mean a defendant who (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the asserted claims; *or* (5) is the only defendant named in a particular cause of action." *Id.* (emphasis added) (internal quotation marks omitted) (citing *Moua v. Jani-King of Minn., Inc.*, 613 F.Supp.2d 1103, 1107 (D. Minn. 2009)).  Reading § 1332(d)(4) as a whole and considering the construction-interpretation instructions in *Westerfield*, the Court finds that the primary-defendant analysis should also focus on the relationship between the argued primary defendant and the plaintiff class.  Defendant Martin Leigh is the only party with liability exposure to the proposed plaintiff class and therefore, the only party able to satisfy a potential judgment.  Defendant Martin Leigh is sued directly and is the sole subject of the asserted class claim.  The Court finds Plaintiff has

carried her burden to establish Defendant Martin Leigh is a primary defendant in connection with the home-state exception.

Defendant Martin Leigh casts this case as an "interstate class action." (Doc. #18, p. 6). It is not. The sole class claim is brought on behalf of only Missouri citizens against a single Missouri-citizen Defendant, Martin Leigh. The Court finds that both the local-controversy exception and the home-state exception require the Court to decline to exercise CAFA jurisdiction.

### B. Fraudulent Joinder

Although this Court is required to decline to exercise jurisdiction under CAFA, traditional diversity jurisdiction may still exist if, as Defendant Martin Leigh argues, it has been fraudulently joined. Defendant Martin Leigh argues it has been fraudulently joined because "it is well-settled law that the MMPA does not apply to claims against Successor Trustees under a Deed of Trust." (Doc. #1, ¶ 63) (citing *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 895-96 (8th Cir. 2014)). As previously stated, in a fraudulent-joinder analysis, this Court is required to consider only whether Missouri law *might* impose liability on Defendant Martin Leigh, the non-diverse Defendant, based on the facts alleged. *Filla*, 336 F.3d at 810.

"When determining the scope of Missouri law, we are bound by the decisions of the Supreme Court of Missouri." *Wivell*, 773 F.3d at 897 (internal quotation marks and citation omitted). Three Missouri Supreme Court cases must guide this Court's fraudulent-joinder analysis—*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. banc 2014); *Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404 (Mo. banc 2014); and *Jackson v. Barton*, 548 S.W.3d 263 (Mo. banc 2018). All three cases analyze the meaning of the phrase "in connection with" as used in the MMPA. The MMPA provides in relevant part:

11

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact *in connection with* the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice. . . . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

Mo. Rev. Stat. § 407.020.1 (emphasis added).

In *Conway* the Missouri Supreme Court reversed the trial court's dismissal of an MMPA claim against a loan servicer who was not an original party to the loan. The *Conway* court stated:

> A loan is composed of both the initial extension of credit and the bundle of related services. It creates a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time. Because each party must continue to perform these duties for the life of the loan, the sale continues throughout the time the parties perform their duties. A party's right to collect a loan is part of that sale and is, therefore, "in connection with" the loan.

438 S.W.3d at 415. The *Conway* court interpreted "in connection with" "to include enforcing the terms of a loan" and further found "the MMPA may cover parties who enter the relationship *after* a buyer enters the transaction, including a loan servicer." *Id.* at 416.

In *Watson* the Missouri Supreme Court considered an appeal from the trial court's grant of summary judgment to a loan servicer who the plaintiff alleged violated the MMPA by wrongfully foreclosing on the deed of trust and engaging in bad-faith, loan-modification negotiations. 438 S.W.3d at 406. The trial court granted summary judgment and found the loan servicer's actions were not "in connection with" the sale of the loan because the loan servicer's "actions were not done before or at the time of the extension of credit in the original loan, and [the loan servicer] was not an original party to that transaction[.]" *Id.* The *Watson* court relied on *Conway* in reversing summary judgment on the claim that the loan servicer violated the

12

MMPA in connection with a wrongful foreclosure. *Id.* The *Watson* court affirmed the grant of summary judgment as to the claim for bad-faith, loan-modification negotiations. The *Watson* court stated, "The loan modification negotiations, however, were not 'in connection with' the sale of this loan because that was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan."[1] *Id.* at 408.

After the Missouri Supreme Court decided *Conway* and *Watson* but before the Missouri Supreme Court decided *Jackson*, the Eighth Circuit issued its decision in *Wivell*, which is the principal case relied on by Defendant Martin Leigh. In *Wivell* the Eighth Circuit analyzed whether the district court had been correct in deciding that a successor trustee was fraudulently joined to an MMPA claim. The plaintiffs alleged the successor trustee "violated the MMPA by making false and misleading statements, refusing to help them, and by failing to carry out its duties as trustee." *Wivell*, 773 F.3d at 895. In applying *Conway* and *Watson*, the Eighth Circuit held:

> *Conway* and *Watson* do not supply a reasonable basis in law for the Wivell's MMPA claim against [the successor trustee]. Both cases concerned the lender-borrower relationship, not the trustee-borrower relationship at issue here, . . . and the *Conway* court made clear that its rationale turned on the continuing nature of the lender-borrower relationship.

*Id.* Finding no reasonable basis in fact and law for the plaintiff's claim, the Eighth Circuit affirmed the district court's decision. *Id.* at 895-96.

---

[1] Defendant Martin Leigh does not argue that the loan modification granted to Plaintiff has any impact on this Court's analysis. The fact Plaintiff was granted a loan modification and made payments pursuant to the modification distinguishes this case from that portion of *Watson*. As the Court must engage in a fraudulent-joinder analysis and not a Rule 12(b)(6) analysis and given the documentation of the loan modification is not before this Court nor has it been argued by the parties, the Court finds the fact Plaintiff was granted a loan modification during the life of the loan does not impact the analysis at this stage.

In *Jackson* the Missouri Supreme Court considered whether a lawyer's activity in filing a collection action and sending a demand letter, all in an attempt to collect a debt owed to a dentist creditor, was "in connection with" the sale of dental services. 548 S.W.3d at 266. The plaintiff alleged that the contract on which the purported debt was based had been fabricated and the defendant lawyer should have known plaintiff's signature on the contract was forged. *Id.* The Missouri Supreme Court concluded that the lawyer defendant's "efforts to collect payment were an attempt to complete the sale transaction and, therefore, were 'in connection with' the sale." *Id.* at 265.

In so holding, the *Jackson* court specifically disagreed with *Wivell* that a lender-borrower relationship is required. The *Jackson* court stated, "First, while both *Conway* and *Watson* involved a lender-borrower relationship, nothing in this Court's analysis suggests such a relationship is required to find a third-party debt collector's actions were 'in connection with' a sale." *Id.* at 272. The *Jackson* court distinguished *Wivell* based on the "narrow, contingent role" of the successor trustee involved in that case.

Defendant Martin Leigh's alleged actions here were not so narrow. Plaintiff alleges in this case that Defendant Martin Leigh took actions to collect the debt. Defendant Martin Leigh sent Plaintiff a letter stating, "MARTIN LEIGH IS ATTEMPTING TO COLLECT A DEBT[.]" (Doc. #1-1, p. 23). Plaintiff alleges Defendant Martin Leigh, in conjunction with the other Defendants, altered the second note by attaching the third allonge and thereafter, Defendant Martin Leigh used the altered loan documents to support its efforts to collect the debt. Plaintiff alleges Defendant Martin Leigh made two, specific attempts to collect the debt.

Several principles emerge from the Missouri Supreme Court's decisions in *Conway*, *Watson*, and *Jackson*. In order for an alleged MMPA violator's action to be found to have been

14

taken "in connection with" a sale, the alleged violator need not have been party to the original transaction. A lender-borrower relationship is not required. The alleged wrongful conduct must relate to the bundle of services agreed to at the inception of the sale. A party's right to collect payment is a part of the sale, and therefore, action taken in an attempt to collect payment is made "in connection with" the sale.

Based on *Conway*, *Watson*, and *Jackson* this Court finds it is reasonable to conclude that Missouri law might impose liability on Defendant Martin Leigh for the conduct alleged in the first-amended complaint. As Defendant Martin Leigh has not been fraudulently joined in this case, traditional diversity does not exist. This case must be remanded to Missouri state court.

## IV. Conclusion

As both the local-controversy exception and the home-state exception apply, either would require this Court to decline to exercise CAFA jurisdiction over this case. The Missouri Supreme Court's decisions in *Conway*, *Watson*, and *Jackson* compel the conclusion that Missouri law might impose liability on Defendant Martin Leigh for the conduct alleged in the first-amended complaint. Whether the first-amended complaint survives a motion to dismiss is for the state court to decide. As a result, Plaintiff's Motion for Remand (Doc. #12) is GRANTED, and this case is remanded to the Circuit Court of Jackson County. The motion to dismiss (Doc. #5) will remain pending for the state court's consideration. Plaintiff's request for costs, expenses, and attorneys' fees incurred in connection with the removal proceedings is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 10, 2019